16-2349
*Triaxx Asset Mgmt. LLC v. South Tryon, LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of April, two thousand seventeen.

Present:
> PETER W. HALL,
> GERARD E. LYNCH,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges.*

---

U.S. BANK NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS TRUSTEE,

        PLAINTIFF,

V.

TRIAXX ASSET MANAGEMENT LLC, FKA ICP ASSET MANAGEMENT LLC,

        INTERPLEADER - DEFENDANT - CROSS - CLAIMANT - APPELLANT,

GOLDENTREE ASSET MANAGEMENT LP, GOLDMAN SACHS & CO., BLACKROCK FINANCIAL MANAGEMENT, INC.,

        INTERPLEADER - DEFENDANTS - CROSS - DEFENDANTS,

16-2349-cv*

---

*The consolidated cases, 16-2483-cv, 16-2576-cv, and 16-2578- cv, were withdrawn by a stipulation so-ordered on 9/26/2016.

16-2349
*Triaxx Asset Mgmt. LLC v. South Tryon, LLC*

V.

SOUTH TRYON, LLC,

        INTERPLEADER - DEFENDANT - CROSS - DEFENDANT - APPELLEE,

TRIAXX PRIME CDO 2006-1, LTD.,

        INTERPLEADER - DEFENDANT - CROSS DEFENDANT.

---

| | |
|---|---|
| For Appellant: | H. PETER HAVELES, JR., (Eric N. Whitney, *on the brief*), Arnold & Porter Kaye Scholer LLP, New York, NY |
| For Appellee: | JONATHAN EDWARD PICKHARDT, (Blair Alexander Adams and William B. Adams, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY |

---

Appeal from a judgment of the Southern District of New York (Pauley, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED**.

Appellant Triaxx Asset Management LLC ("Triaxx") appeals from the district court's opinion and order granting summary judgment to Appellee South Tryon, LLC ("South Tryon"). The district court issued a declaratory judgment that Triaxx breached the Indenture and Collateral Management Agreement ("CMA") by failing to sell certain securities within three years of their having gone into default. We assume the parties' familiarity with the underlying facts, the procedural history, the arguments presented on appeal, and the district court's rulings.

The Court reviews *de novo* a district court's grant of summary judgment. *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 67–68 (2d Cir. 2008). Summary judgment is appropriate

2

where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[T]he words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co. N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (alterations in original) (quoting *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d. Cir. 2012)). An unambiguous agreement "must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). "New York . . . follows the common (and commonsensical) rule that a specific provision . . . governs the circumstance to which it is directed, even in the face of a more general provision." *Capital Ventures Int'l v. Republic of Arg.*, 652 F.3d 266, 271 (2d Cir. 2011). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).

The language in the Indenture and CMA, when read together, unambiguously requires Triaxx to sell Defaulted Securities within three years of the date they went into default. In arguing that the documents are ambiguous with respect to its duty to sell Defaulted Securities pursuant to section 12.1(a)(ii) of the Indenture, Triaxx primarily relies on provisions in the CMA that require Triaxx to perform its obligations in a "commercially reasonable" manner. But those provisions, read plainly and in their proper context, do not override the Indenture's express directive that Defaulted Securities "shall" be sold within a three-year time period. To the

3

contrary, they mandate that Triaxx perform its specific obligations under the Indenture.[1] The only exception to the Indenture's mandate to sell arises if Triaxx "does not receive any bid on such Defaulted Security." Indenture § 12.1(b). That exception, however, does not provide Triaxx with the discretion not to sell, or even attempt to sell, Defaulted Securities following the procedures outlined in section 12.1(b) of the Indenture.[2] Therefore, we agree with the district court that the "commercially reasonable" language in the Indenture and the CMA provided Triaxx discretion in how to carry out the sale, but did not provide it discretion as to the timing of the sale. Joint App'x at 1312–13 ("'[C]ommercially reasonable' is used to describe the 'efforts' that the Collateral Manager 'shall' take to sell a Three Year Defaulted Security within the confines of the procedures set forth therein.").

---

[1] CMA § 7 (the CMA "shall use commercially reasonable efforts to ensure that no action is taken by it, and shall not intentionally or with reckless disregard take any action, which would . . . (e) *result in the Issuer violating the terms of the Indenture in any material respect*, (f) adversely affect the interests of the Trustee, the Noteholders in any material respect (*other than the effect of such actions expressly permitted hereunder or under the Indenture*" (emphasis added)); CMA § 2(d)(xi) ("The Collateral Manager shall . . . take any other action *consistent with the terms of the Indenture* which the Collateral Manager reasonably believes to be in the best interests of the Noteholders." (emphasis added)); CMA § 2(a) ("The Collateral Manager shall comply in all material respects with all of the *terms and conditions of the Indenture* affecting the duties and functions that have been delegated to it thereunder and hereunder." (emphasis added)).

[2] The Indenture and the CMA are both silent as to whether Triaxx may set reserve prices when soliciting "*bona fide* bids for such Defaulted Security." Indenture § 12.1(b). During oral argument, Triaxx emphasized that the sale of Defaulted Securities without a reserve price might, at least under certain circumstances, be deemed commercially unreasonable. But the question of what constitutes "commercially reasonable" effort is not before us. Neither South Tryon nor any other noteholder argued before the district court that Triaxx acted in a commercially unreasonable manner when it sold, or attempted to sell, any of the Defaulted Securities. We therefore decline to address this issue.

4

Triaxx's lack of discretion in the timing of the sale also gives effect to the parties' intent. That is, as the district court explained, the mandatory timing of the sale "is designed to protect the most senior noteholders (who received lower interest payments)" and who will be paid first under its waterfall payment scheme "in the event that Triaxx 2006-1's collateral deteriorated." Joint App'x at 1315; *Greenfield*, 780 N.E.2d at 170 (noting "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent," and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing."). In other words, the senior noteholders, like South Tryon, received lower interest payments for the benefit of being paid out first in the event of devaluation. Triaxx's argument that the CMA requires it always to act in a "commercially reasonable manner" to the benefit of all noteholders undermines the terms of the contract as well as the waterfall payment scheme that the parties agreed to. Thus, the contract clearly contemplates protections for noteholders that mandate a sale once certain securities begin to lose their value and go into default.

We have considered all of Triaxx's remaining arguments on appeal and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5